# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Shawn Avery Hobson, | Case No. 9:17-cv-698-PMD-MGB |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| | FOR PARTIAL DISMISSAL |
| Gregory Alexander, et al., | |
| Defendants. | |

Plaintiff is a pretrial detainee at the Hampton County Detention Center located in South Carolina. Plaintiff has filed a civil rights action pursuant to 42 U.S.C. § 1983, complaining that although he was admittedly resisting arrest (i.e. wrestling with the police officer on the ground), the use of a taser during efforts to arrest him amounted to "excessive force." He also complains about the hiring and training of police officers in general and about his medical care (i.e. alleging that he wanted an MRI, not just x-rays). Plaintiff is proceeding *pro se* and *in forma pauperis*. Pursuant to the provisions of 28 U.S.C. § 636(b)(1), and Local Civil Rule 73.02(B)(2) (D.S.C.), the United States Magistrate Judge is authorized to review the case initially and to submit findings and recommendations to the United States District Judge. This case is now substantially in proper form. After careful review, the Magistrate Judge recommends partial dismissal of the Amended Complaint (DE#20) for the following reasons:

**I. Relevant Law**

    **A. Liberal Construction for *Pro se* Filings**

*Pro se* pleadings are given liberal construction and are held to a less stringent standard than formal pleadings drafted by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). However, "[t]he 'special judicial solicitude' with which a district court should view ... *pro se* filings does not transform the court into an advocate. *United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012), *cert. denied*, 133 S.Ct. 2401 (2013). Only those questions which are squarely presented to a court may properly be addressed." *Weller v. Dept. of Soc. Servs., City of Baltimore*, 901 F.2d 387, 391 (4th Cir. 1990). Giving "liberal construction" does not mean that the Court can ignore a prisoner's clear failure to allege facts that set forth a cognizable claim. "Principles requiring generous construction of *pro se* complaints ... [do] not require ... courts to conjure up questions never squarely presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986).

### B. Review Under 28 U.S.C. §§ 1915, 1915A(a)

Under established local procedure in this federal judicial district, the Magistrate Judge has carefully reviewed this *pro se* prisoner complaint pursuant to 28 U.S.C. § 1915 and in light of the following precedents: *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); and *Gordon v. Leeke*, 574 F.2d 1147 (4th Cir. 1978).

Plaintiff is proceeding *in forma pauperis*, and therefore, 28 U.S.C. § 1915 applies to this case. The statute permits an indigent litigant to commence an action in federal court without prepaying the administrative costs of proceeding with the action. To protect against possible abuses of this privilege, the statute allows the court to dismiss the case upon finding that the case is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. §1915(e)(2)(B).

The Prison Litigation Reform Act ("PLRA") also provides for the screening of complaints "in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).

A finding of frivolity can be made where the complaint lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). A claim based on a meritless legal theory may be dismissed *sua sponte* "at any time" under 28 U.S.C. §1915(e)(2)(B). *Neitzke*, 490 U.S. at 319. The United States Supreme Court has explained that the statute "is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits." *Id*. at 326. With respect to failure to state a claim, the Court "need not accept the [plaintiff's] legal conclusions…unwarranted inferences, unreasonable conclusions, or arguments." *Kloth v. Microsoft Corp*., 444 F.3d 312, 319 (4th Cir. 2006). "A district court's dismissal under Rule 12(b)(6) is, of course, with prejudice unless it specifically orders dismissal without prejudice." *Carter v. Norfolk Comm. Hosp. Assoc.*, 761 F.2d 970, 974 (4th Cir. 1985).

## II. The Present Lawsuit

Plaintiff filed his Complaint in this action on March 13, 2017, and several weeks later on March 31, 2017, sought leave to amend. (DE# 9). The Court entered an order directing Plaintiff to file a proposed amended complaint by April 21, 2017 and instructed that it should "contain all allegations against all the Defendants in one filing." (DE# 10, Order of April 5, 2017). Subsequently, Plaintiff mailed a proposed amended complaint, which the Clerk of Court did not receive until May 1, 2017. Plaintiff purportedly signed such document on April 14, 2017. (DE# 20 at 29). His cover letter is dated April 16, 2017, but the mailing envelope is post-marked April 27, 2016, nearly a week past the deadline. The amended pleading does not bear a detention center time-stamp verifying when Plaintiff actually gave it to authorities for mailing. In any event, the

Court will give Plaintiff the benefit of the doubt in this instance. The Court will assume the proposed amended complaint was timely and will consider it. The Court has granted Plaintiff's motion to amend (DE# 19, Order of May 3, 2017). The Amended Complaint was entered in the Court's docket that same day. (DE# 20).

A. **Parties**

Plaintiff's Amended Complaint names the following eight defendants: 1) Gregory Alexander (Chief of Police); 2) James H. Roggers (Police Officer); 3) Jerry Cook (Mayor of Yemassee, South Carolina); 4) Colin Moore (Town Councilman); 5) Jordan Jinks (Town Councilman); 6) Peggy O'Banner (Town Councilwoman); 7) Danial Anderson (Town Councilman); and 8) Yemassee Police Department. (DE# 20). Plaintiff indicates that he sues three Defendants (Alexander, Roggers, and Moore) in their individual and official capacities. (*Id*. at 2-3). Plaintiff sues the other five Defendants (Cook, Jinks, O'Banner, Anderson, and Yemassee Police Department) only in "official capacity." (*Id*. at 3-4).

B. **Allegations**

In his Amended Complaint, Plaintiff alleges that on July 17, 2015, he was parked at the Cozy Corner Café talking with passenger Jamie Crowley when Chief Alexander drove up behind them and activated his police vehicle's blue lights. (DE# 20 at 18-19, "Statement of Claim"). Plaintiff alleges that Chief Alexander had a brief conversation with passenger Crowley. Chief Alexander then came to the driver side of Plaintiff's vehicle and asked Plaintiff to step out of the vehicle. (*Id*. at 20). Plaintiff indicates he did so. According to Plaintiff, Chief Alexander told him he was going to jail and to put his hands behind his back. (*Id*.). By his own account, Plaintiff refused to do so and strenuously resisted arrest. Plaintiff indicates he told the Chief he was "not

going to jail" and pulled his arm away "fast." (*Id.*). Plaintiff indicates he repeated "I ain't going to jail," and that Chief Alexander said "you going today." Plaintiff indicates (verbatim):

> We began to go at it in a tusseling (sic) way. I kept asking why I was going to jail and he never told me. We hit the ground and I was trying to get him off of me as we grappled and I pushed him away from me. We got up at some point and he wouldn't let me go! I looked towards the side door of the Cozy Corner Café and locked eyes with town councilman Colin Moore. I asked Councilman Moore to help me….I didn't get any help for whatever reason from Councilman Moore….I got away and [Chief Alexander] came towards me grabbed me again and tried to get loose …
> I said all that you do you messing with me? He then got very upset …and he threw me to the ground…we were on the ground. I was able to get up at some point, but he was still on me and we went down again. We were spralled (sic) on the ground and soon after, Sgt. Roggers pulled up and exited his vehicle, stood to the side to get a look at me and then pulled out his taser and shot me in my upper back as I was on my belly with my right arm behind my back. Soon after he shot me, [Chief] Alexander hit me in my lower back with his taser….I woke up in the Hampton Regional Medical Center in Varnville, tests were performed and x-rays; and I was taken to jail.

(DE# 20 at 21-22). Plaintiff was charged with several drug offenses and with resisting arrest with a deadly weapon. (*Id.*). Plaintiff was transported to the Hampton Regional Medical Center, where he was examined by medical personnel, x-rayed, and given pain medication. Plaintiff was then booked into the detention center and given a receipt for the money he was carrying.[1]

Plaintiff acknowledges that, after being arrested on July 17, 2015, he was promptly taken to the hospital for medical attention. Plaintiff demanded an MRI in addition to the X-rays performed. (DE#20 at 23).[2] Plaintiff indicates that he continued to complain about pain and being unable to sleep. He was returned to the Hampton Regional Medical Center on July 19, 2017, where

---

[1] Plaintiff initially alleged that his money had been "stolen" by police, but in light of the fact that he was given a receipt for the money at booking, he omitted such contention from his Amended Complaint. (DE# 20).

[2] Plaintiff initially alleged he was not given an MRI "because my x-rays did not show any injuries," (DE#1), but now alleges that he was not given an MRI because the detention center would not pay for it. (DE# 20).

he was examined again and given additional medication. Despite such hospital visits, Plaintiff indicates that he submitted "a host of grievances" about his medical care. (*Id.*). Plaintiff then filed this lawsuit.

As for the causes of action in his Amended Complaint, Plaintiff alleges that the police officers used excessive force when arresting him.[3] Plaintiff also complains that Defendant Colin Moore (Town Councilman) "willfully and w[a]ntonly stood by as Plaintiff was subjected to illegal and unlawful seizure." (DE# 20 at 13). Plaintiff generally complains that the Yemassee Police Department "failed to adequately train, instruct, and supervise its Chief of Police … and police officer [Sgt. Roggers] in the art of professional conduct …[and] in the proper use of … tasers…[and] in the art of physical restraint... [and] use of force. (*Id.* at 7).[4] Plaintiff complains that the Yemassee Police Department should have "investigated" the circumstances of his arrest. *Id.* at 10). Plaintiff complains that the Mayor and Town Council members "wantonly and intentionally by and thru personal vote" authorized the hiring of municipal law enforcement officers. (*Id.* at 14-16). Plaintiff complains generally about his medical care (i.e. he alleges that he wanted an MRI, not just X-rays and pain medication), and specifically blames Police Chief Alexander for not authorizing an "MRI" for him. (DE# 20 at 23). Liberally construed, Plaintiff appears to be asserting a constitutional claim against Chief Alexander for deliberate indifference to serious medical needs under the Eighth Amendment.

---

[3] "Excessive force claims by pretrial detainees are governed by an objective standard, rather than a subjective one." *Dilworth v. Adams*, 841 F.3d 246 (4th Cir. Nov. 7, 2016) (citing in *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015) ("the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one")).

[4] The United States Supreme Court has explained that a conclusory allegation that an officer is "inadequately" trained is an insufficient basis upon which to rest § 1983 municipal liability. City of Canton, Ohio v. Harris, 489 U.S. 378, 390–91 (1989). A plaintiff must identify a specific deficiency in the training program. Plaintiff has not done so. In any event, the Town of Yemassee is not named as a party.

C. **Relief Sought**

Plaintiff seeks $1,500,000.00 in monetary damages. (DE# 20 at 19, "Relief"). He does not appear to seek any other kind of relief.

III. **Discussion**

A. **Failure to State a Claim For Relief**

The Amended Complaint fails to state a claim in several ways. To state a § 1983 claim, a plaintiff must allege facts indicating: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). While a complaint need not expressly invoke § 1983 as the legal theory for a plaintiff's claim, the United States Supreme Court has instructed that a complaint "must plead facts sufficient to show that [a] claim has substantive plausibility." *Johnson v. City of Shelby*, 135 S.Ct. 346 (2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676–77 (2009)). With respect to certain claims and parties, the Amended Complaint fails to meet this minimal pleading standard.

1. **Councilman Moore did not take "state action" when he "stood by"**

The Amended Complaint attempts to assert a § 1983 claim against Councilman Moore because he allegedly "stood by" and did not help Plaintiff resist arrest. Even when taken as true and liberally construed, such allegation fails to state any plausible claim for purposes of 42 U.S.C. § 1983. Councilman Moore had no duty to act as Plaintiff desired, and in fact, could not lawfully interfere with police officers making an arrest of a criminal suspect. See South Carolina Code Section 16–5–50 (1976) (making it unlawful to hinder a police officer in the course of making an arrest); *State v. Etherage*, 277 S.C. 523, 290 S.E.2d 413 (S.C.Sp.Ct. April 6, 1982) (affirming conviction under South Carolina Code § 16–5–50 for interfering with an arrest by a police officer).

Even though Councilman Moore holds a local legislative position, he did not "act under color of state law" when he observed the arrest. *See West*, 487 U.S. at 48. As a bystander, he was no different than any other private citizen. In observing an arrest, he did not violate any constitutional right of the Plaintiff. The United States Supreme Court has repeatedly emphasized that § 1983 excludes "merely private conduct…." *Am. Mfrs. Mutual Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)). "[P]rivate activity will generally not be deemed 'state action…' " *DeBauche v. Trani*, 191 F.3d 499, 507 (4th Cir. 1999) (quoting *Blum*, 457 U.S. at 1004), *cert. denied*, 529 U.S. 1033 (2000). Generally, rights secured by the Constitution are protected only against infringement by governments. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998); *Asbury v. Tartarsky*, Case No. 8:13–cv–3364–RMG, 2015 WL 1120081, *4 n.5 (D.S.C.) (same), *affirmed by,* 616 F.App'x 71 (4th Cir. Sept. 14, 2015) (per curiam).

Plaintiff does not allege that Councilman Moore took any state action. In fact, Plaintiff complains because Councilman Moore did *not* do anything. Councilman Moore merely observed the alleged events. This does not amount to acting "under color of state law." Therefore, Plaintiff's Amended Complaint fails to state a necessary element for a claim under 42 U.S.C. § 1983. On the facts alleged in the Amended Complaint, Councilman Moore was not the cause of any alleged deprivation of Plaintiff's constitutional rights. *See Taylor v. Rooney*, 143 F.3d 679, 686 (4th Cir. 1998) (holding that a § 1983 plaintiff must prove "that the defendant *caused* the deprivation of his or her rights") (italics added), *cert. denied*, 525 U.S. 1139 (1999). Any § 1983 claim that Councilman Moore violated Plaintiff's rights by merely observing Plaintiff's arrest is subject to summary dismissal. The United States Supreme Court has held that a claim based on a meritless

legal theory may be dismissed *sua sponte* "at any time" under 28 U.S.C. §1915(e)(2)(B). *Neitzke*, 490 U.S. at 319.

## 2. Yemassee Police Department is not a "Person" under § 1983

The Amended Complaint also fails to state a claim for relief because Plaintiff has sued the Yemassee Police Department, which is not a "person" amenable to suit for purposes of § 1983. It is well-settled that only "persons" may act under color of state law. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). This Court has repeatedly held that "municipal and county police departments are not 'persons' within the meaning of 42 U.S.C. § 1983." *Hammond v. Fernandes*, Case No. 2:12-1128-MGL-BHH, 2012 WL 3717184, *8 (July 18, 2012), *adopted*, 2012 WL 3716432 (D.S.C. Aug. 28, 2012) (summarily dismissing for failure to state a claim, and observing "at most, Plaintiff's Complaint merely attributes, in purely conclusory fashion, alleged wrongful actions of [the officer] to the … Department"); *Burris v. N. Charleston Police Dept.*, Case No. 2:13–cv–699–GRA–SVH, 2013 WL 2897031, *3 (D.S.C. June 13, 2013) (summarily dismissing police department as a defendant); *McNeil v. Rock Hill Police Dept.*, Case No. 0:12–1933–CMC–SVH, 2012 WL 6863917, *2 (D.S.C. Dec. 27, 2012*), adopted by* 2013 WL 168050 (D.S.C., Jan. 16, 2013) (same, dismissing police department as a defendant); *Green v. Murdaugh*, Case No. 5:12–1086–RMG–KDW, 2012 WL 1987764, *2 (D.S.C May 07, 2012), *adopted by* 2012 WL 1987259 (D.S.C. June 4, 2012) (same, dismissing police department because it was not subject to suit under § 1983).

This Court has repeatedly explained that a police department is "an instrumentality of a municipality—not an independent entity—and thus not a 'person' within the meaning of § 1983." *Hunt v. West Columbia Police Dept.*, Case No. 3:14–70–MGL-PJG, 2015 WL 4274827, *2 (D.S.C. July 14, 2015) (holding that the "Defendant West Columbia Police Department is not a

"person" amenable to suit under § 1983"). *See also Spellman v. City of Columbia Police Dep't*, Case No. 9:12-2376-TMC-BM, 2012 WL 5409626, *2 (D.S.C. Sept. 28, 2012) ("Police Department is a group of officers in a building and, as such, is not subject to suit under § 1983 … police departments, usually are not considered legal entities subject to suit."), *adopted by*, Case No. 9:12-2376-TMC-BM, 2012 WL 5408023 (D.S.C. Nov. 6, 2012); *Milligan v. D.E.A.*, Case No. 3:13-2757-TLW-PJG, 2014 WL 897144, *5 (D.S.C. Mar. 6, 2014) (same, collecting cases) (citing *Terrell v. City of Harrisburg Police Dept.*, 549 F.Supp.2d 671, 686 (M.D.Pa. 2008) ("It is well-settled that police departments operated by municipalities are not 'persons' amenable to suit under § 1983."). In the present case, the Defendant Yemassee Police Department is not a "person" for purposes of 42 U.S.C. § 1983 and must be dismissed as a party.

### 3. *Respondeat Superior* **Not Applicable Against Supervisory Defendants**

Plaintiff, who is seeking monetary damages, appears to be suing various Defendants on the basis of their supervisory positions, including Jerry Cook (Mayor), Colin Moore (Town Councilman), Jordan Jinks (Town Councilman), Peggy O'Banner (Town Councilwoman), and Danial Anderson (Town Councilman). Plaintiff does not complain that they personally took any actions against him. Rather, Plaintiff alleges that these Defendants were responsible for authorizing the hiring of the Chief of Police and Officer Roggers, who in turn, arrested Plaintiff in a single incident on drug and weapons-related charges. (DE# 1 at 4). Although Plaintiff alleges that the Defendants "failed to protect the civil rights of the Plaintiff," such allegation is generalized and conclusory.

The United States Supreme Court has repeatedly emphasized that an individual defendant is not liable under § 1983 absent any personal involvement. *Iqbal*, 556 U.S. at 676–77 ("Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-

official defendant, through the official's own individual actions, has violated the Constitution.... each Government official, his…title notwithstanding, is only liable for his…own misconduct"); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (holding that in a § 1983 action, "liability is personal, based upon each defendant's own constitutional violations").

Although Plaintiff appears to be attempting to impose liability on supervisory officials, it is well-settled that supervisory positions alone do not subject a defendant to liability. The doctrines of *respondeat superior* and vicarious liability are generally not applicable in § 1983 actions. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 693-94 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977); *Bowman v. Ozmint*, Case No. 0:08-2517-PMD-PJG, 2009 WL 3065180 (D.S.C. Sept. 22, 2009), *aff'd by* 369 F.App'x 416 (4th Cir. Mar. 5, 2010) (explaining that liability may not be based on *respondeat superior* but only on the supervisor's own wrongful acts or omissions).[5] Plaintiff cannot proceed solely on a theory of *respondeat superior*.

### B. Absolute Legislative Immunity

Moreover, if Plaintiff is attempting to sue individual legislative council members, he may not sue them for their "personal vote" on a budget authorizing the hiring of law enforcement officers for the town. "Legislative immunity protects those engaged in legislative functions against the pressures of litigation and the liability that may result." *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 484 (4th Cir. 2014). Although Plaintiff complains that the town council members voted to approve the town budget and provide for the hiring of a police chief for the town, the United States Supreme Court has explained that "local legislators are entitled to

---

[5] Plaintiff acknowledges that he vigorously resisted arrested and complains generally about the arresting officers, but the stated facts in the Amended Complaint do not suggest knowledge of any supervisory officials of any pervasive or unreasonable risk of constitutional injury, much less any deliberate indifference or causal link. *See Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994), *cert. denied*, 513 U.S. 813 (1994).

absolute immunity from § 1983 liability for their legislative activities." *Bogan v. Scott-Harris*, 523 U.S. 44, 53, 118 S.Ct. 966, 972 (1998). The United States Supreme Court has explained:

> Absolute immunity for local legislators under § 1983 finds support not only in history, but also in reason. *See Tenney v. Brandhove*, 341 U.S., at 376, 71 S.Ct., at 788–89 (stating that Congress did not intend for § 1983 to "impinge on a tradition so well grounded in history and reason"). The rationales for according absolute immunity to federal, state, and regional legislators apply with equal force to local legislators. Regardless of the level of government, the exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability. *See Spallone v. United States*, 493 U.S. 265, 279, 110 S.Ct. 625, 634, 107 L.Ed.2d 644 (1990) (noting, in the context of addressing local legislative action, that "any restriction on a legislator's freedom undermines the 'public good' by interfering with the rights of the people to representation in the democratic process") … Furthermore, the time and energy required to defend against a lawsuit are of particular concern at the local level, where the part-time citizen-legislator remains commonplace.

*Id*. at 53.

In addition, the United States Supreme Court further explained in *Bogan* that the town's Mayor, who had prepared and submitted the budget for legislative enactment by the local council, was also entitled to legislative immunity because his actions were "integral steps in the legislative process." *Id*. at 55. "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id.*; *and see Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 684 F.3d 462, 470 (4th Cir. June 27, 2012) (affirming dismissal of suit where "budget was facially valid legislative action" and defendants were entitled to legislative immunity regarding their decision to fund certain positions).

In the present case, the budget authorization for the hiring of law enforcement officers for the town and the voting on such matters is legislative. *Bogan*, 523 U.S at 55 ("act of voting is a 'quintessentially legislative' activity"); *Kensington Vol. Fire Dept.*, 684 F.3d at 471 ("enacting a budget is a legislative act"). The Town Council was vested with the authority to approve a budget

authorizing appointment of officers, and the council members voted on such matters as part of their legislative duties. Therefore, the Defendant Council members are immune from civil rights liability based on the performance of such legislative function. *See, e.g., Gupta v. Town of Brighton*, 9 F.Supp.2d 242, 245 (W.D.N.Y. June 26, 1998), *affirmed by*, 182 F.3d 899 (2nd Cir. June 22, 1999) (dismissing complaint based on legislative immunity).

## IV. Conclusion

This action is subject to partial summary dismissal because: 1) the Amended Complaint fails to state a plausible § 1983 claim against Councilman Moore for "standing by" without acting to prevent Plaintiff's arrest; 2) the Amended Complaint fails to state a claim because the Yemassee Police Department is not a "person" for purposes of § 1983; 3) Plaintiff may not proceed against the supervisory Defendants solely on a theory of *respondeat superior*; and 4) the town council members and mayor have absolute legislative immunity from § 1983 liability for legislative actions in submitting a budget and voting to authorize the hiring of town police officers. For these reasons, partial dismissal is appropriate. Specifically, Mayor Cook, the four town council members named in the Amended Complaint (i.e. Moore, Jinks, O'Banner, and Anderson), and the Yemassee Police Department should be dismissed as parties.

## V. Recommendation

Accordingly, the Magistrate Judge recommends that the Amended Complaint (DE# 20) should be **dismissed in part,** without prejudice, and without issuance and service of process.

**IT IS SO RECOMMENDED.**

_____
May 15, 2017                                   MARY GORDON BAKER
Charleston, South Carolina            UNITED STATES MAGISTRATE JUDGE

Plaintiff's attention is directed to the **Important Warning** on the following page:

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).